25-5119, counsel, for the appellant. If you will make your appearance and then proceed,  Thank you, Your Honor. Counsel, it may please the Court, Shira Keeval, Assistant Federal Public Defender, for Sarah Freeman. The Aggravated Identity Theft Statute prohibits certain identity theft-related acts involving a means of identification of another person. In context, that text applies to identifiers about and belonging to a human being who is alive. Because the government only presented evidence that Ms. Freeman used identifiers associated with someone who is already dead, this Court should vacate her aggravated identity theft convictions and remand for re-sentencing on the remaining counts. The title of the statute at issue 1028A uses the phrase, Aggravated Identity Theft. At the time of the statute, 2004, could you steal the identity of a deceased person? At the time of the statute, identity was not a possession that you could steal. That's why the statute was important. There were a bunch of states that were starting to criminalize identity theft in all of its possible varieties, and those states specified if they wanted to criminalize, to turn identifiers associated with the dead into a possession that could be stolen, they clarified that. They said something in a definitional section or in the statute itself that person meant person dead or alive. Well, let me parse out what I thought I heard you say. Are you saying that at the time, in 2004, there were states that were enacting statutes to protect against identity theft that included stealing the identity of deceased people? Yes, Your Honor. And if that is true, then why cannot we draw some inference from the use of the, in the title of Aggravated Identity Theft, that Congress also sought to address the same evil on a federal level, which would mean that Congress also sought to address stealing the identity of deceased people? Your Honor, I don't think it's implausible that a legislature would want to do that. Many legislatures had. I think what's implausible is that a legislature would do that silently, and there are a number of reasons set out in my brief. I'd like to go through them because I think that's obviously the crux of this case. One way that you could get over that hurdle and convince yourself that no, this title does not include that is by looking at Dubin, where Dubin looks at dictionary definitions of identity theft, which say, and Dubin adopts this as what identity theft is, identifiers about and belonging to, and makes that belonging to part invokes not just identity theft, but theft, the typical definition of the word person. It's the default. The default is people once they die don't have possessions. Nothing belongs to them. That theft cannot be committed against the dead because the dead have no possessions. And with identity theft, there's no reason to distinguish that. I thought you just said that in 2004, there were states that were prescribing identity theft to include stealing the identity of a deceased person. And if that is true, and if Congress uses that same language, why can one not infer they were trying to get at the same thing? And you were talking about possessions. Well, if those statutes in those states were viewing this as something that dead people can have, an identity, why does that not apply here? I'm using your words. Yes, I understand. The state prohibitions were very broad. The state prohibitions created standalone statutes. They prohibited, I don't believe that all of them applied to the dead. Only some of them did. Congress was legislating in a brand new field where these new statutes did exist, but they were very, very new. They were in conversation, if anything, with these state statutes. And the decision that Congress made was to create a narrow statute. And from what basis do you discern that? Because if, in fact, Congress uses the same language, unless it says, no, no, no, no, we're not including dead people, like the states, then why should one infer that they weren't including dead people? Because Congress did not use the same language. Identity theft is the same language. So, Your Honor, I think, I understand the question. The question is, did Congress intend, or clearly state, I think is more important than what they intended. Wait a minute, wait a minute. Clearly state? We're not in some sort of clear state doctrine here. We're trying to discern what these words mean, right? And if the words mean X, Y, and Z, if they clearly mean it unambiguously, they don't have to mean it really clearly. They just have to mean it, right? So unambiguously, whatever language you want to use. So unambiguously, if Congress wants to say this unambiguously, then they use the language that the states used. They use the language that they've previously used in statutes, criminal statutes, non-criminal statutes, when Congress wants to include the dead as potential victims of a crime, it does so. I recognize, Your Honor, that I'm coming here with five circuits that have come out the other way, and so it seems like the weight of authority is against me. But what I want to point out is that those are complete outlier cases. There are not other cases. Five cases are an outlier? Yes. When they all go the same way, how's that? Where's that definition of outlier come in? What I'm saying, Your Honor, is that there are not prior cases about any other federal statute, criminal or otherwise, or as far as I can find, state statutes in hundreds of years of American history that have said that the word person, standing alone, includes people long since dead. That is what the innovation is. And so to say that Congress unambiguously intended to change the accepted meaning, or the many accepted meanings of the word person, by adopting a title that used a phrase that was brand new in states and the federal government, and that somehow that unambiguously channeled much clearer language from state statutes to override this default that has existed for hundreds of years, that's existed throughout cases in the state and the federal system, to adopt a definition for person that does not appear in the dictionary and is not in common usage, that is what we're saying is not unambiguous. If that is what happened, that is certainly ambiguous. Well, but Counsel, the scoreboard here of all the circuits being against your argument, the courts that have undergone this analysis obviously have to go beyond the text. And so even if it were true that when Congress was legislating in 2004, it was doing so with the background that you described, the courts that have looked at the context and the structure of this particular statute, again, have all come out the different way than the position that you're advocating for today. And one of the reasons, as you know, is they look at the A1 versus A2 part of the statute, and some of the courts call the absurdity result. I'm not sure I buy it's absurd, but can you address, and I know you're going to bring up Flores-Figueroa, but how that fits into our analysis of the A1 versus A2 and giving the word, the same word, perhaps how we apply the meanings differently, if at all. Yes, Your Honor, and I'm not fighting against the possibility or even the likelihood or the conclusion that this phrase, means of identification of another person, means the same thing in A1 and E2. The problem with what these other circuits did is they made this assumption that the two ways to commit the A2 offense had to somehow overlap each other as much as possible, and that you need the use of a means of identification of another person and the use of a fraudulent document to really overlap. I don't know where that premise comes from, and it is contrary to Flores-Figueroa, where the Supreme Court said, no, this doesn't cover the field. We have this blank and we don't care. And not only is it contrary to that, but they clearly didn't delve very deep into the statute because they give an example of what they want to be covered by both that is covered by neither. They say, if you just use the Social Security card of the dead person, now you have liability, but if you give the number, you don't have liability, and actually you have neither, because the second prohibition in A2 only applies to fraudulent or falsified documents. So either it has to be changed from the government document, or it has to be a fraudulent document altogether that wasn't issued by the government authority. And so a dead person's Social Security card would not count under that particular provision. But again, the argument is basically saying there needs to be the same, but the Supreme Court has already said that that fraudulent document could be a made-up person, but the means of identification cannot be a made-up means of identification. And so if the Supreme Court has already said we have no problem with this, I don't know why there would be a problem saying that there's one more place where potentially there would be a difference. In our starting point here, when we look out at the, again, at all these circuits that have come out the other way, is, you know, we're, at least gives us pause to create such a circuit split. So Dubin has to do a lot of lifting for you, and you've already mentioned that case. But Dubin doesn't analyze the language that's at issue here, in this case from the statute. So how can we be confident that Dubin can really be the key to unlock the circuit split for you? And, Your Honor, I have two answers, one on Dubin and one other ways to get through this circuit split. This Court is not simply bound by the yes-no answers that the Supreme Court gives to questions presented before it. It's bound by the holdings and by dicta. And I think that large sections of Dubin are premised on the idea that identity theft has to involve taking something that's about and belonging to a person. And that belonging to phrase is repeated over and over, and that means something in the law. And so that, I think, is where this Court comes from. You would have to distinguish that, and I don't see how you do it and the government did not do that, because I think that's part of the holding. But even if it were dicta, you would be bound by that. Counsel, on Dubin, I understand your argument. I think this is what you said. Dubin clarified that Section 1028A1 is a theft crime and not a fraud crime. But later on in Dubin, the Court said that the statute intermingles aspects of theft and fraud. That isn't, it seems like that isn't consistent with your argument. Your Honor, it does say that, and what it's talking about is that there are these three different verbs of acts that I think possess, transfer, and use. And it says use, yeah, that's the kind of more fraud, but what you're using is this thing that has been stolen. And as it said in Flores-Figueroa, the harm, really, that's being targeted by this statute is that theft and the harm to that third-party person. Well, I'm just not seeing how much Dubin works for you. I mean, you spent some time on it, but I didn't see any acknowledgment of the fact that the Court itself said it's not just theft. And Your Honor, I hear what you're saying. It absolutely said that. But this means of very clear that two of those verbs are theft-related, and the third one that's fraud-related happens after the theft, but that that's part and parcel of this thing that was about and belonging to another person. But even if you completely disagree with my Dubin argument, I think if you're trying to look at those five other circuits, excuse me, the six circuits, those cases just couldn't stand even before Dubin. They make assumptions about dictionary definitions that are not true. They don't propose which definition ultimately they're using. They say just because you can add an adjective before the word means that that word is plainly broader than what the narrow definition is, which is not true linguistically. The government gives no examples of this happening with the word person. Counsel, you'd agree, wouldn't you, that the word's means of identification could apply to a live or dead person, couldn't it? I mean, aren't there means of identifying people who are alive and also means of identification to identify people who are dead? There's a technical definition in the statute of means of identification. If there wasn't, then sure, we could talk about like... I'm just asking if that phrase in the statute affects the way we should interpret the word person. I think it affects it in a way that helps me. It is separately defined in 1028. Well, wasn't Ms. Hernandez a real person? She once upon a time was a real person. And I think, right, if you ask, is Teresa Hernandez a person today? She's not a real person anymore. I think that that's a metaphysical question that we could debate for a really long time. Well, wasn't her social security number and her driver's license a means of identification? She is no longer alive. I didn't ask that. She's not a person the way you are. I didn't ask that. I said, if there's a social and there's a driver's license number, wouldn't those be a means of identification for her? They are means of identification that are... They're identifiers that were associated, but maybe belong to her in life under this statute, are associated with her identity. But she is not a person anymore. We don't talk that way in regular English. Statutes have never spoken that way. We don't. Talk about deceased relatives as persons. They're not persons anymore because they're not alive. If I may respond. I don't think that that's the typical way people do it and that it comes down to religious and metaphysical questions and differences of opinion about what the nature of a man is after they die. Does person in the statute cover a corporation? No. Why not? Because in the definition of means of identification, it says individual. And if you look at 1 U.S.C. 1, individual is code in the U.S. Code for a natural person.  Thanks. Good morning, and may it please the court. Thomas Buscemi for the United States. The phrase means of identification of another person includes deceased persons for three reasons. The ordinary meaning of the word persons includes both. The context of the statute then reinforces that conclusion and the purpose of the statute confirms it. And we can look to the analysis of the six other circuits that have asked this question to see the train of logic that they use. First, turning to the definition of the word. Some of the circuits say that the ordinary meaning of the word person includes the dead just on its face and we're done at that point. They all go on to analyze the question further, but the outlier on that would be the person. Counsel, that's not that's not much of a legal analysis just to say, well, in my opinion, person ordinarily means this. Contrast that with the presentation of Ms. Freeman, wherein she says, well, if you look for ordinary meanings of words, we go to dictionaries. And she cites a whole list of dictionaries, which are the sort of common dictionaries of Blacks for Law, Amir and Webster, Oxford English Dictionary. And all the dictionaries seem to go against your position as to ordinary meaning. So how much weight should we give those definitions in the dictionaries as they were in 2004? Yes, Your Honor. And I would disagree with the characterization that all the dictionaries limit the definition of the word persons to living persons specifically. And the circuits, other circuits do ask this question as well. I'd point the court to Marion Webster's Collegiate Dictionary defining a person as a human or an individual and the Webster's Third International Dictionary saying that it's a human being. Your Honor, in this court has, is no stranger to the question of how to define the word person. As this court analyzed in Doe, the word person can change based on the context of the statute. The point here of the conclusion that the word person includes the deceased is that it's within the gambit of the word. And so we then turn to the context of the statute. Some of the court circuits do say that once you ask the question of are deceased persons under the umbrella noun persons that you then are done, it is within that gambit. But they, all the circuits don't stop there. They do go further to analyze the context question. And this court's question in Doe was quite on point for this case. The word, it said that the word person in isolation in the context of more than one meaning and for person to mean a living person, the statute must suggest legal action that only the living may undertake. And we don't have that here, Your Honors. In turning to the context of the statute, as directed by both Doe as well as the court in Dubin, although questioning a different word in the statute, we look at the context to determine its meaning. And according to the argument made by Ms. Freeman, it does lead to what the other circuits describe and what we would agree is an absurd result. And Ms. Freeman made kind of a twist on that argument during her brief and during oral argument that a document of a dead person never counts under either A1 or A2. And so you get the frankly absurd result where a fake passport like prints at home counts for aggravated identity theft under the terrorism subsection and a real passport of a living person counts, but the passport of a deceased person doesn't. It doesn't make any sense why Congress would leave open that gap in the statute. And that was logic that all six circuits found fairly persuasive. Your Honors, and then after that, we turn to the third kind of point, the purpose of the statute. And opposing counsel does reference the purpose being that the argument that was made here is that the assumption is that invalidates this sort of absurdity rationale is that somehow or other these two disjunctive phrases have to cover and criminalize the same sort of thing. Why wouldn't it be possible to say means of identification of another person excludes deceased people, but false identification document does not? What's so shocking or absurd about that? I mean, I read it and I had a hard time figuring out why I should be shocked or view it as a remarkable event that particularly since it's joined disjunctively, which tends to mean that you're talking about different things. Yes, Your Honor, and that is not the argument that was made by the appellant a moment ago. I thought that was the argument, why don't you address that argument? I apologize, Your Honor. That the nature of Congress's attempt in the statute to protect the public from those who would take identities or make fake identities and use them in the course of an act of terrorism was an attempt to make a, to pursue a broad-based protection for the public. And in this case, it would be incongruent with Congress's expressed intent there to leave open such a gap in the statute. Well, we start with language, not purpose. And what I'm saying is that those cases that have said that there's something about this language, which creates an absurdity to accept the view that part of it would relate to a group of people, a category that excludes deceased people and the other would not, linguistically putting aside purpose, what is absurd about that? Particularly since it's joined with the disjunctive or, why can't Congress be addressing two kinds of activity? Who cares whether it's about terrorism? Yes, that's the title, but the point is, putting that aside, why can't Congress just criminalize two different kinds of criminal activity? And they could, Your Honor, if they wanted to leave open that gap, they absolutely could. The absurdity comes from the idea that why would you criminalize something as unserious as a fake or fraudulent document and something as serious as a real person's, living person's driver's license or passport, but then choose not to criminalize the thing in the middle, the dead person's passport or driver's license. There's no logical reason why you would leave open that gap. And so to assume that Congress left open that gap, there'd have to be some reason for it, if that makes sense. Well, but you said a moment ago that we can, or you were referring to the clear express intent of Congress. And, you know, as the Chief just mentioned for that, we looked at the text itself and there are numerous other Title 18 statutes, and when they want to cover deceased persons, they say that explicitly. So why can't we now, noting it doesn't say deceased persons here in 1028A, say, well, had Congress wanted to capture deceased persons, it would have said that? If Congress had said that, my argument is that it would be surplusage, as the word person naturally includes both living and the deceased. But beyond that point... Well, but if that were true, then, you know, what would be the point of, I mean, Congress may say they disagree with you. That's why they use that language in those other statutes. If it was just unnecessary and everyone understood that person meant the living and the dead, then why include that at all? You're telling us now that there are numerous other criminal statutes that include surplusage language. Well, and as this Court decided earlier this month in McCarthy, Congress, that was on May 6th of this month. That was case 25-5026. Surplusage is not necessarily a command. It's a presumption. And so Congress can and sometimes does act with surplusage. But... If you would submit a 28-J letter so that we have that as part of a complete record, if that's not in your brief, okay, it wouldn't be, right? Yeah, that's correct, Your Honor. It was decided earlier this month. Yeah, that's what I thought. It wasn't directly on point of the issue at question here today, so I didn't, but I absolutely can. Your Honors, I want to push back on the question of that the deceased can have identities, and they do. And just because there's general case law about them not being able to be stolen from for their physical effects, like a car or a house, it's still a crime, right? The theft of those items are just theft of the estate or the descendants. But an identity is different. It doesn't pass from the deceased to the descendants. My grandfather's Social Security card doesn't pass to me. His name doesn't pass to me. His driver's license doesn't pass to me. His identity is his identity. And the courts have recognized the idea that the deceased have some rights that go past death. Counsel, do you quibble with the notion that traditional notions of theft, the crime of theft, require a living victim? I don't quibble with that broader point, Your Honor. I will say that my point is that identities are different. The theft of an identity is different as it doesn't pass from the deceased to the living victims. Okay, well, how then do you think about the Dubin case that I think explicitly talks about that this particular statute is a theft statute? And one of the problems that Dubin addresses is how broadly it had been interpreted to capture fraud type offenses. And that's, you know, the sort of the core reasoning and holding of the court. Yes, Your Honor. And as Judge Matheson brought up, the court really analyzes the question as a mixed case of fraud and theft, right? The misappropriation of the identity is what they say combined with its unlawful use. And in Dubin, the court is really focused on how the identity is used in the fraud, right? That the identity must be at the crux of the fraud itself as to who is committing the fraudulent act, not some other way. And they were really concerned about whether or not, you know, over billing or waiters, you know, charging extra on their bill or attorneys, you know, rounding up would fall into the gambit of the statute. And that was clearly beyond the scope of the statute. Here we have Ms. Freeman doing what the court described as a classic case of identity theft. She's taking the identity, the social security number, and the driver's license of another real person and using them to convince Walmart that she is the person on this fake check. And so this goes right to the heart of what Dubin was concerned about. She was convicted of other crimes for that conduct, right? So again, and I get your point, but the more focused question before us is not whether she committed criminal conduct, it's whether she violated this particular statute. And so I guess I'm sort of still waiting to hear and figure out how Dubin doesn't change your position or your analysis or our analysis, I should say, to some extent to maybe not directly abrogate the circuit opinions that have come out before, but at least call into question a lot of the analysis that's been applied. Dubin doesn't really go into what the definition of the word person in the statute is. And so what we're reading from Dubin are essentially tea leaves about the fact that it's a theft crime. But the fact that Dubin characterizes it as a mixed question of fraud and theft doesn't mean that the statute doesn't refer to people as both living and dead. As I was arguing earlier, the dead can have identities that can be stolen, just like the living can have identities that can be stolen. And the reason why you can't steal from the dead normally is because those assets pass to their heirs, and to steal them is still a crime. It's just a crime against their heirs. But identities don't pass. They don't transfer from the deceased to the living. And so, therefore, it's still, it should still be a crime, as laid out by Congress, to take someone's identity and use it. And it's a very prevalent form of identity theft in this country. Counsel, could I just, this is a different question from the ones you've been getting so far. But the jury instructions in this case, the relevant jury instruction, was that the government had to prove the defendant knew that a means of identification belonged to a real person, living or dead. Does it matter to the way we approach this case, the way you approach this case, or both of you do, that the appellant chose to pursue it as a sufficiency of the evidence case as opposed to a jury instruction case? It seems like it's, now there was no objection to the jury instruction. That may explain how it got here the way it did. But does this matter? Somewhat, Your Honor. The, if it had been brought as a jury instruction objection, then the court, there was no objection made at the lower court. And so, I see my time has expired. May I? Yes, please. Thank you. It would have been reviewed as a plain error question. And since six circuits have identified the other way, it wouldn't have stood up to a plain error analysis. And so, I would assume that's why Ms. Freeman chose a different tact. We do address the question in footnote one on page eight of our brief, basically stating that, in our opinion, the Simpkins decision leaves the door open for the sufficiency challenge of the evidence. If there are no further questions, I would ask this court to affirm the conviction of Sir I. Freeman. Thank you. Case is submitted. Thank you, counsel.